# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| THE O.N. EQUITY SALES COMPANY, | : | |
|     Plaintiff, | : | |
|  | : | |
|     v. | : | CIVIL ACTION |
|  | : | |
| LAWRENCE F. EMMERTZ JR., | : | NO. 07-2670 |
|     Defendant. | : | |
|  | : | |

## Memorandum and Order

YOHN, J.                                                                      July ____, 2008

Plaintiff The O.N. Equity Sales Company ("ONESCO") has filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) and (3).  ONESCO seeks relief from the court's December 19, 2007 Memorandum and Order ("December 19 Memorandum and Order"), which granted defendant Lawrence Emmertz's motion to compel arbitration and denied ONESCO's motion for an order precluding summary disposition of defendant's motion to compel arbitration pending discovery.  For the reasons discussed herein, I will deny ONESCO's motion for relief.

## I.        Factual and Procedural Background[1]

Emmertz is a private investor who invested in a private placement offered by Lancorp Financial Fund Business Trust ("Lancorp").  Nonparty Gary Lancaster served as a trustee for Lancorp.  Lancaster was a representative of ONESCO from March 23, 2004 to January 3, 2005.

---

[1] The facts presented in this section are a summary of the undisputed facts addressed in the December 19 Memorandum and Order.

On March 17, 2003, prior to becoming a representative of ONESCO, Lancaster made a private placement memorandum ("PPM") on Lancorp available to Emmertz and other potential investors. Emmertz signed an Accredited Investor's Letter and Subscription Agreement for Lancorp on January 6, 2004 and subsequently transferred $100,000 to Lancorp. Emmertz's $100,000 investment was not invested immediately; it was held in escrow by Lancaster until Lancorp's closing date.

Lancorp investors were initially offered the opportunity to purchase insurance, which would insure them against Lancorp's failure to return their funds. Due to changes in the insurance industry, Lancaster was not able to obtain this insurance. He therefore replaced this insurance with a validated, written obligation from a bank acting as a custodian. This obligation provided the same level of protection as the insurance would have provided. On April 5, 2004, after finding this replacement for the insurance and after he became an ONESCO representative, Lancaster sent a letter to Lancorp investors asking them to acknowledge the changes and to confirm that they would proceed as a subscriber with these changes or to withdraw their subscriptions. On April 8, 2004, Emmertz acknowledged the changes in the offering and confirmed that he wanted to proceed as a subscriber in Lancorp.

Emmertz's funds were removed from escrow and invested in Lancorp on May 14, 2004. Lancorp subsequently invested a significant portion of its funds in Megafund, which was later discovered to be a Ponzi scheme. As a result, Lancorp's investors, including Emmertz, sustained significant losses, and Lancorp was placed in receivership.

Emmertz initiated an arbitration action against ONESCO pursuant to the National Association of Securities Dealers, Inc. ("NASD") Code of Arbitration Procedure ("NASD

2

Arbitration Code") on or about March 16, 2007.  He amended his NASD pleading on April 25, 2007 and again on May 3, 2007.  Emmertz alleged that ONESCO negligently failed to supervise Lancaster and failed in its oversight duties of Lancaster and that ONESCO, acting through Lancaster, made numerous false representations to Emmertz and failed to disclose material facts concerning Lancorp and Megafund.[2]

ONESCO filed this action against Emmertz on June 25, 2007 and asked the court to enjoin the arbitration and to declare that ONESCO is not obligated to arbitrate Emmertz's claims under the NASD Arbitration Code.  The parties subsequently filed numerous motions on the issues of arbitrability and discovery.[3]  On December 19, 2007, I granted Emmertz's motion to

---

[2] During a telephone conference with counsel on December 13, 2007, Emmertz's attorney confirmed that Emmertz is only seeking to arbitrate claims that arose between March 23, 2004 and January 3, 2005—the time period during which Lancaster was a representative of ONESCO.

[3] This action is similar to approximately twenty other actions brought by ONESCO against Lancorp investors in federal courts across the county.  The parties have essentially filed the same motions and memorandums of law in support of their motions in each case.  To date, all seventeen of the other courts that have ruled on the issue of arbitrability have compelled arbitration without allowing the discovery ONESCO requested.  *See O.N. Equity Sales Co. v. Stephens*, No. 07-0269, 2008 WL 835808 (N.D. Fla. Mar. 28, 2008); *O.N. Equity Sales Co. v. Broderson*, No. 07-13482, 2008 WL 427468 (E.D. Mich. Feb. 14, 2008); *O.N. Equity Sales Co. v. Cattan*, No. 07-70, 2008 WL 361549 (S.D. Tex. Feb. 8, 2008); *O.N. Equity Sales Co. v. Staudt*, No. 07-142, 2008 WL 271329 (D. Vt. Jan. 30, 2008); *O.N. Equity Sales Co. v. Nemes*, No. 07-3303, 2008 WL 239258 (N.D. Cal. Jan. 28, 2008); *O.N. Equity Sales Co. v. Hoegler*, No. 07-3211, 2008 WL 304924 (D.N.J. Jan. 28, 2008); *O.N. Equity Sales Co. v. Cui*, No. 07-2844, 2008 WL 170584 (N.D. Cal. Jan. 17, 2008); *O.N. Equity Sales Co. v. Thiers*, No. 07-305, 2008 WL 110603 (D. Ariz. Jan. 10, 2008); *O.N. Equity Sales Co. v. Samuels*, No. 07-1091, 2008 WL 104079 (M.D. Fla. Jan. 8, 2008); *O.N. Equity Sales Co. v. Rahner*, 526 F. Supp. 2d 1195 (D. Colo. 2007); *O.N. Equity Sales Co. v. Wallace*, No. 07-0859, 2007 WL 4106476 (S.D. Cal. Nov. 15, 2007); *O.N. Equity Sales Co. v. Prins*, 519 F. Supp. 2d 1006 (D. Minn. 2007); *O.N. Equity Sales Co. v. Gibson*, 514 F. Supp. 2d 857 (S.D.W. Va. 2007); *O.N. Equity Sales Co. v. Robinson*, No. 3:00 CV 378, 2007 WL 2840477 (E.D. Va. Sept. 27, 2007); *O.N. Equity Sales Co. v. Venrick*, 508 F. Supp. 2d 872 (W.D. Wash. 2007); *O.N. Equity Sales Co. v. Pals*, 509 F. Supp. 2d 761 (N.D. Iowa 2007); *O.N. Equity Sales Co. v. Steinke*, 504 F. Supp. 2d 913 (C.D. Cal. 2007). Two other courts have denied ONESCO's request for discovery but have not yet ruled on the

compel arbitration and denied ONESCO's motion for an order precluding summary disposition

of defendant's motion to compel arbitration pending discovery.  *See O.N. Equity Sales Co. v.*

*Emmertz*, 526 F. Supp. 2d 523 (E.D. Pa. 2007).[4]

      Under the guidelines set forth by the Third Circuit, the parties were required to arbitrate if

I determined that they had a valid arbitration agreement and the dispute between them fell within

the language of the arbitration agreement.  *See John Hancock Mut. Life Ins. Co. v. Olick*, 151

F.3d 132, 137 (3d Cir. 1998).  Because the parties did not have a separate arbitration agreement,

the primary issue was whether the NASD Arbitration Code provided a valid arbitration

agreement that required them to arbitrate.  *See Emmertz*, 526 F. Supp. 2d at 529-32.

      As a NASD member, ONESCO is bound by NASD rules.  The NASD Arbitration Code

requires "the arbitration of any dispute, claim, or controversy arising out of or in connection with

the business of any member of the Association" that is "between or among members or

associated persons and public customers."  NASD Code Arb. P. R. 101001.  Under the rules,

"[a]ny dispute, claim, or controversy eligible for submission under the Rule 10100 Series

---

issue of arbitrability.  *See O.N. Equity Sales Co. v. Merkel*, No. 07-531, 2008 WL 380573 (M.D.
Fla. Feb. 11, 2008); *O.N. Equity Sales Co. v. Charters*, No. 07-1135, 2008 WL 220371 (M.D. Pa.
Jan. 25, 2008).
     Now that the arbitration proceedings have begun, ONESCO is apparently filing the same
or substantially similar Rule 60(b) motions in some of the courts that granted the investors'
motions to compel arbitration.  Two courts have already denied ONESCO's Rule 60(b) motions.
*See O.N. Equity Sales Co. v. Gibson*, 553 F. Supp. 2d 652 (S.D.W. Va. 2008); *O.N. Equity Sales
Co. v. Pals*, 551 F. Supp. 2d 821 (N.D. Iowa 2008).  To date, no other courts have issued public
opinions on ONESCO's Rule 60(b) motions.

    [4] The December 19 Memorandum and Order also dismissed ONESCO's complaint and
dismissed as moot the additional pending motions that had been filed by ONESCO, including a
motion to consolidate a preliminary injunction hearing with a trial on the merits, a motion
seeking a preliminary injunction, and a motion seeking an order authorizing the parties to engage
in immediate discovery on the issue of arbitrability.

between a customer and a member and/or associated person arising in connection with the

business of such member or in connection with the activities of such associated persons shall be

arbitrated under this Code." *Id.* at R. 10301(a).  Accordingly, under Rule 10301, ONESCO was

bound to arbitrate Emmertz's claims if the undisputed facts showed that (1) Emmertz was a

"customer" of ONESCO, and (2) the dispute arose in connection with ONESCO's business or in

connection with Lancaster's activities.

In the December 19 Memorandum and Order, I concluded that Emmertz was ONESCO's

customer as required by Rule 10301 from March 23, 2004 through January 3, 2005.  This

determination was based on two separate rationales.  First, the General Provisions section of the

NASD Rules defined "customer" in the following manner:  the "term customer shall not include

a broker or dealer," NASD R. 0120(g), and Emmertz was neither a broker nor a dealer.  *See*

*Emmertz*, 526 F. Supp. 2d at 529-30 & n.6.  Second, Emmertz was a customer of ONESCO from

March 23, 2004 through January 3, 2005 because of Emmertz's investment relationship with

Lancaster during that time period.  *See id.* at 529-31.  When determining that Emmertz was a

customer of ONESCO during the relevant time period, I specifically concluded that the

> undisputed facts show[ed] that Emmertz had an investment relationship with
> Lancaster while Lancaster was a representative of ONESCO.  These undisputed facts
> include[d] Lancaster's April 5, 2004 letter to Emmertz; Emmertz's April 8, 2004
> confirmation that he would proceed with his subscription; Lancaster's holding of
> Emmertz's funds in escrow until Lancorp's effective date; and Lancorp's effective
> date of May 14, 2004.

*Id.* at 531.[5]

---

[5] Persuasive opinions from other courts also used the contours of the relationship between
the investor and the representative of the broker-dealer to determine whether there was an
investment relationship that led to the investor's status as a customer of the broker-dealer.  *See*
*Vestax Secs. Corp. v. McWood*, 280 F.3d 1078, 1081-82 (6th Cir. 2002); *John Hancock Life Ins.*

Additionally, I determined that the dispute Emmertz sought to arbitrate arose in connection with ONESCO's business or in connection with Lancaster's activities, as required by Rule 10301. *Id.* at 531-32. Prior to reaching this conclusion, I pointed out that ONESCO's arguments on this issue were unpersuasive because ONESCO had read Emmertz's NASD pleading too narrowly; contrary to ONESCO's assertions, Emmertz's NASD pleading was not based solely on any representations Lancaster made in the PPM, which was issued before Lancaster became a representative of ONESCO. Rather, the pleading also included claims that ONESCO negligently failed to supervise Lancaster and failed to act while Lancaster was a representative of ONESCO. *Id.* at 531-52. I found that the dispute arose in connection with ONESCO's business or in connection with Lancaster's activities "because Emmertz's NASD pleading include[d] a claim for negligent supervision and allege[d] pertinent activities that took place while Lancaster was an ONESCO representative." *Id.* at 532. After determining that the two requirements of Rule 10301 were met, I concluded that the parties had a valid arbitration agreement and the dispute between them fell within the language of the arbitration agreement. I therefore granted Emmertz's motion to compel arbitration.

---

*Co. v. Wilson*, 254 F.3d 48, 59-60 (2d Cir. 2001); *Daugherty v. Wash. Square Secs., Inc.*, 271 F. Supp. 2d 681, 689 (W.D. Pa. 2003).

## II.    ONESCO's Motion for Relief Pursuant to Rule 60(b)[6]

ONESCO now seeks relief from the December 19 Memorandum and Order under Rule

60(b), arguing that Lancaster's testimony during a recent arbitration hearing revealed that the

affidavits submitted to the court to support Emmertz's motion to compel arbitration were replete

with false statements and omissions.  ONESCO concludes that the new evidence presented

through Lancaster's testimony demonstrates that all of Emmertz's NASD claims are based on

events that took place either prior to or after Lancaster's association with ONESCO and,

therefore, it does not have to arbitrate Emmertz's claims.  Alternatively, ONESCO concludes that

the new evidence shows that it is entitled to discovery on the issue of arbitrability.

"The general purpose of Rule 60, which provides for relief from judgments for various

reasons, is to strike a proper balance between the conflicting principles that litigation must be

brought to an end and that justice must be done."  *Boughner v. Sec'y of Health, Educ. & Welfare*,

572 F.2d 976, 977 (3d Cir. 1978).  The Third Circuit "view[s] Rule 60(b) motions as

'extraordinary relief which should be granted only where extraordinary justifying circumstances

are present.'"  *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (quoting *Plisco v. Union R.R.

Co.*, 379 F.2d 15, 16 (3d Cir. 1967)); *see also Boughner*, 572 F.2d at 977 ("[R]elief from a

judgment under Rule 60 should be granted only in exceptional circumstances.").  Thus, "[t]he

movant under Rule 60(b) bears a heavy burden, which requires more than a showing of the

_____

[6] ONESCO filed a notice of appeal on January 15, 2008, prior to filing the current motion for relief under Rule 60(b).  Although "[f]iling a notice of appeal automatically transfers jurisdiction from the district court to the appellate court[]," *Main Line Fed. Sav. & Loan Ass'n v. Tri-Kell, Inc.*, 721 F.2d 904, 906 (3d Cir. 1983), when a party files a motion for relief under Rule 60(b) after a notice of appeal has been filed, the district court retains jurisdiction to entertain and deny the Rule 60(b) motion, *Venen v. Sweet*, 758 F.2d 117, 123 (3d Cir. 1985).

potential significance of the new evidence." *Bohus*, 950 F.2d at 930 (internal quotations marks and citations omitted).

### A.       Rule 60(b)(2) Analysis

Under Rule 60(b)(2), "the court may relieve a party . . . from a final . . . order . . . for newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).  As used in Rule 60(b)(2), the term "newly discovered evidence" means "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *Bohus*, 950 F.2d at 930 (quotation marks and citations omitted).  Under Rule 60(b)(2), a "party is entitled to new trial only if such evidence is (1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, *and* (3) would probably have changed the outcome of the trial." *Bohus*, 950 F.2d at 930.  If the court concludes that the evidence would not have changed the outcome, it need not consider whether the evidence was material rather than cumulative and whether it could have been discovered prior to trial through the exercise of reasonable diligence.  *See id.* at 931 n.14.[7]

### 1.       Evidence of Lancorp's Effective Date(s)

ONESCO first argues that it is entitled to relief because evidence regarding three effective dates was not before the court when it considered Emmertz's motion to compel arbitration.  ONESCO argues that this new information regarding the effective dates would

---

[7] None of the evidence ONESCO presents would have changed the outcome of the December 19 Memorandum and Order as required by the third prong.  Although the first two prongs therefore would not have to be addressed, in order to provide a full analysis of why ONESCO has not shown that it is entitled to relief, I will briefly address why ONESCO has also failed to meet the first two prongs as they relate to each piece of evidence ONESCO presents.

change the outcome of the December 19 Memorandum and Order because the evidence leads to

the conclusion that for purposes of his NASD pleading, Emmertz is not a customer of ONESCO

under the NASD Arbitration Code and, therefore, his claims are not arbitrable.

### a.    March 17, 2003

First, ONESCO points to the March 17, 2003 effective date of Lancorp's PPM as

evidence that demonstrates that events leading to Emmertz's loss took place before Lancaster's

association with ONESCO.  Emmertz contends that this date pertains only to the effective date of

the PPM and does not change the outcome of the December 19 Memorandum and Order.

The following exchange took place when Lancaster was explaining the PPM at the

arbitration hearing:

> Q. . . . Now, first of all, do you see on the bottom where it says, "Effective
> date, March 17, 2003"?
> A. Yes.
> Q. What does it indicate that this effective date is?  Effective date of
> what?
> A. Effective date of the offering.
> Q. The effective date of the memorandum for the offering?
> A. Correct.
> Q. That's what it indicates, right?
> A. Yes.
> Q. Does it indicate anything else?
> A. No.

(Gary Lancaster Arb. Test. 87:9-22, Feb. 6, 2008.)

As Lancaster's testimony clearly demonstrates, March 17, 2003 only pertained to the

effectiveness of Lancorp's PPM.  The effective date of the PPM does not alter the factual finding

that there was an investment relationship between Emmertz and Lancaster while Lancaster was a

representative of ONESCO because it does not alter the events that led to the conclusion that

Emmertz had an investment relationship with Lancaster and was ONESCO's customer during the relevant time period.  *See Emmertz*, 526 F. Supp. 2d at 529-31.  Accordingly, the affirmation that the PPM was effective on March 17, 2003 does not change the outcome of the December 19 Memorandum and Order.

Furthermore, the evidence that the PPM was sent to Emmertz before Lancaster was associated with ONESCO was a part of the facts recited in the December 19 Memorandum and Order.  *See id.* at 524 ("Gary Lancaster . . . made a private placement memorandum ("PPM") on Lancorp available to Emmertz and others on or about March 17, 2003.").  Because this evidence was already before the court, it is cumulative and is not "newly discovered."  Additionally, ONESCO had this evidence before it filed the lawsuit in June 2007 (*see* Compl. ¶ 9 & Ex. A), so it cannot argue that it could not have discovered the evidence prior to December 2007.  ONESCO has therefore not met its burden of showing it is entitled to relief on the basis that Lancaster's testimony affirmed that the PPM was effective before he was a representative of ONESCO.

## b.    May 14, 2004

The second effective date addressed during arbitration is May 14, 2004, the date relied on by the court as to when the funds were removed from escrow and invested in Lancorp when granting Emmertz's motion to compel arbitration.  According to ONESCO, this date only pertained to Lancorp deposits with Tricom, another investment, and it is not relevant to Lancorp's investment in Megafund, which ultimately led to Emmertz's losses.  ONESCO asserts that the newly discovered information regarding Lancorp's March 2004 investment in Tricom shows that the court erroneously concluded that May 14, 2004 was Lancorp's effective date.  However, the portions of Lancaster's testimony that ONESCO cites to support its assertion that

10

the *May* 2004 effective date only involves the investment in Tricom do not support this assertion; the testimony ONESCO cites to is Lancaster's explanation that he deposited funds with Tricom in *March* 2004.  (*See* Lancaster Arb. Test. 25:20-27:14, Feb. 5 2008.)  ONESCO has not pointed to any evidence to demonstrate that the events in May 2004 only pertained to Lancorp's investment in Tricom.

Moreover, an independent examination of the testimony confirms that May 14, 2004 is Lancorp's effective date and is therefore important for reasons wholly unrelated to Lancorp's investments in Tricom.  Pursuant to the PPM, the offer from Lancorp was revocable until Lancorp's effective date.  Lancaster's testimony explains that this effective date took place on May 14, 2004, when the requisite minimum of $5 million in invested funds was accumulated in Lancorp's escrow account:

> Q.  And I take it that you maintained in 2003 an escrow account for Lancorp Financial Fund?
> A.  Correct.
> Q.  And were all investor monies held in that escrow account?
> A.  Yes.
> Q.  Until you reached a minimum?
> A.  Correct.
> Q.  And was . . . the minimum that was reached in May 2004 when the investment became effective?
> A.  Yep.
> Q.  If you didn't reach the minimum, did you have the right to cancel the offering?
> A.  Yes. . . .
> . . . .
> Q.  . . . The Lancorp Financial Fund became officially effective in May 14, 2004; is that true?
> A.  Correct.
> Q.  Before May 14, 2004, you had the right to simply tell the investors you're not going to proceed with this offering; isn't that not fair to say?
> A.  Yeah.  That's correct.

(Lancaster Arb. Test. 249:20-250:10, 265:14-23, Feb. 4, 2008.)

Given the testimony quoted above, ONESCO's assertion that May 14, 2004 only pertained to Lancorp's investment in Tricom and that the court erred in finding that Lancorp's effective date was May 14, 2004 is baseless.  Lancaster's testimony confirms the factual finding that Lancorp's effective date was May 14, 2004, the date when the minimum investment was reached and the offering became irrevocable.  ONESCO's evidence does not demonstrate otherwise, and ONESCO has not established that evidence of Lancorp's investment in Tricom in March 2004 would have changed the outcome of the December 19 Memorandum and Order.

Additionally, ONESCO has not established that the evidence is material rather than cumulative or that it could not have discovered the evidence prior to December 19, 2007. Emmertz asserts that ONESCO had the information regarding the 2004 investment in Tricom in the spring of 2007, when it received transcripts of Lancaster's November 2005 deposition in front of the Securities and Exchange Commission ("SEC").  Emmertz also notes that Lancaster voluntarily sent ONESCO a full set of Lancorp records in the spring of 2007 and that other Lancorp investors voluntarily produced more records on October 9, 2007.  In its reply brief, ONESCO argues that Lancaster's SEC deposition testimony pertains to an unrelated Megafund litigation.  It also argues that the limited records Lancaster produced did not provide much guidance regarding the veracity of Lancaster's affidavits that were previously submitted to this court.  ONESCO does not, however, refute the contention that it actually had evidence regarding the March 2004 investment in Tricom prior to the court's issuing the December 19 Memorandum

375123ad420d074c

and Order.[8]  Moreover, in a memorandum of law filed in this court on September 6, 2007,

ONESCO referred to evidence presented in Lancaster's SEC deposition testimony, and it

attached a copy of a portion of that testimony as an exhibit to its motion.  (*See* Pl.'s Reply in

Support of Mot. for Order Authorizing the Parties to Engage in Immediate Discovery on the

Issue of Arbitrability, Doc. No. 25, at 4 & Ex. B.)  Thus, ONESCO already had evidence of the

March 2004 investment.  ONESCO has not met its burden of showing it is entitled to relief under

Rule 60(b)(2) based on the evidence that Lancorp began investing in Tricom in March 2004.

c.       **February 2005**

The third effective date that ONESCO argues arose during Lancaster's testimony is

February 2005.  During the arbitration, Lancaster testified that none of the money that had been

invested in Lancorp was lost prior to Lancorp's February 2005 investment in Megafund.

(Lancaster Arb. Test. 4:11-24, Feb. 6, 2008.)  He also testified that he was communicating with

Lancorp investors in January and February 2005 regarding the Megafund investment.  On

January 18, 2005, after the Tricom investment fell through, Lancaster sent Lancorp's investors a

letter informing them that Lancorp did not have a viable investment alternative.  (Lancaster Arb.

Test. 279:14-280:14, Feb. 5, 2008.)  Lancaster subsequently received a letter from Megafund's

general counsel on February 5, 2005.  After receiving this letter, Lancaster entered into a joint

---

[8] ONESCO seemingly argues that it could not have discovered this evidence through the exercise of reasonable diligence until Lancaster testified the week of February 4, 2008 because it was not until that time that ONESCO became fully aware the "falsity" of Lancaster's previous affidavits.  This misses the point of the requirement of Rule 60(b)(2).  The issue is whether ONESCO could have discovered the evidence of the March 2004 investment in Tricom prior to the court's issuing the December 19 Memorandum and Order, not whether it could have fully discovered whether all of Lancaster's statements were true prior to the court's issuing the December 19 Memorandum and Order.

venture agreement with Megafund, and Lancorp invested in Megafund. (*Id.* at 283:10-24.)
Then, on February 8, 2005, Lancaster sent a letter to all of Lancorp's investors informing them
that the necessary documents had been executed and the investment would proceed. (*Id.* at
284:7-23; Pl.'s Mem. in Support of Mot. for Relief Ex. C.)

ONESCO asserts that the evidence regarding the communications in January and
February 2005 and the February 2005 investment are the relevant dates because these events are
the actual basis for Emmertz's claims. ONESCO further reasons that because these events took
place after ONESCO terminated its relationship with Lancaster, if the court had this information,
it would have concluded that Emmertz is not a customer of ONESCO under the NASD
Arbitration Code and that his claims are not arbitrable.[9]

The evidence is not as favorable to ONESCO's position as ONESCO portrays it to be.
As Emmertz points out, ONESCO neglected to address Lancaster's testimony concerning a
December 6, 2004 letter he sent to all of the investors while he was an ONESCO representative.
During his testimony, Lancaster explained that the money invested in Tricom was supposed to be
used for same-day trades. In December 2004, it became apparent that the trades would not occur,
and Lancaster therefore requested a return of the funds that had been deposited with Tricom.
(*See* Lancaster Arb. Test. 25:20-27:6, Feb. 5, 2008.) On December 6, 2004, Lancaster sent the
investors a letter informing them that Lancorp had withdrawn its funds from Tricom because

---

[9] ONESCO also notes that Lancorp's internal balance and deposit sheet lists February 1,
2005 as the investment's effective date (Pl.'s Mem. in Support of Mot. for Relief Ex. E), and that
this further supports its contention that February 2005 is the relevant effective date. This internal
bookkeeping date, which only refers to Lancorp's investment in Megafund, does not support the
assertion that February 2005 is the only effective date the court should rely on when determining
Lancorp's effective date.

Tricom had misled Lancaster and Lancorp regarding the investment.  (*Id.* at 275:11-276:13.)  The letter also informed investors that another investment was pending and that Lancaster expected the necessary documents to be executed later that month, with participation in the fund to begin in January 2005.  (*Id.* at 276:19-277:6.)  Finally, through this letter, Lancaster gave investors the option to remain in the fund or redeem their shares.  (*Id.* at 277:24-278:9.)  He did not, however, require confirmation to remain in the fund.

The information regarding the January and February 2005 communications and February 2005 investment in Megafund does not support ONESCO's motion for relief for several reasons.  First, the January 18, 2005 letter ONESCO relies on was merely a follow-up letter to the December 6, 2004 letter, and it simply informed the investors that Lancorp had not secured a viable investment alternative.  (*Id.* at 279:14-280:24, 281:6-12.)  Lancaster's testimony reveals that the events ONESCO refers to began in December 2004, while Lancaster was still an ONESCO representative, and the evidence confirms that there was an ongoing investment relationship between Emmertz and Lancaster while Lancaster was a representative of ONESCO.  Thus, ONESCO's evidence of the January and February 2005 communications does not change the outcome of the December 19 Memorandum and Order.

Second, ONESCO's assertion that the February 2005 effective date is the relevant date fails because ONESCO continues to read Emmertz's NASD pleading too narrowly.  As noted in the December 19 Memorandum and Order, Emmertz's NASD pleading includes claims that ONESCO negligently failed to supervise Lancaster and failed in its oversight duties when Lancaster was a representative of ONESCO.  Because of the allegations regarding ONESCO's failures to supervise and to act, Emmertz's NASD pleading encompasses more than just the

actual act of investing in Megafund.  Moreover, because of this broad pleading, the fact that

Emmertz's funds were not invested in Megafund until after Emmertz was no longer a

representative of ONESCO does not preclude arbitration.[10]  ONESCO's arguments that the

February 2005 events led directly to Emmertz's loss and that none of the events that took place

while Lancaster was a representative of ONESCO led to Emmertz's monetary losses pertain to

the merits of Emmertz's NASD claims, not to the arbitrability of the claims.  The merits of these

claims are to be considered by the arbitrators, not the court.  *See AT&T Tech., Inc. v. Commc'ns

Workers of Am.*, 475 U.S. 643, 650 (1986).[11]

Third, ONESCO's argument on the importance of the February 2005 investment as the

relevant effective date fails because for purposes of determining whether Emmertz's claims are

arbitrable, the relevant relationship is the relationship between Emmertz and ONESCO, not the

relationship between Lancorp and its investments.  The February 2005 date only pertains to

Lancorp's relationship with Megafund; it does not change the determination that Emmertz was a

customer of ONESCO during the time period in which Lancaster was a representative of

ONESCO.

The parties' arguments regarding whether ONESCO could have exercised reasonable

diligence to discover the evidence of the January and February 2005 communications and the

---

[10] For these reasons, ONESCO's reliance on *Wheat, First Securities, Inc. v. Green*, 993
F.2d 814 (11th Cir. 1993) is still misplaced.  The December 19 Memorandum and Order included
a full analysis of why *Wheat*'s holding does not compel an outcome in ONESCO's favor, *see
Emmertz*, 526 F. Supp. 2d at 531-32, and the court will not reengage in the same analysis here.

[11] As Emmertz points out, to a certain extent ONESCO is now attempting to argue a new
theory—that Emmertz's claims arose when he actually incurred the losses, not during the events
and misrepresentations leading up to the loss.  A Rule 60(b) motion is not the appropriate
mechanism to argue new theories that could have been argued before but were not.

February 2005 investment prior to the December 19 Memorandum and Order are the same as

their arguments regarding the evidence of the March 2004 Tricom investment.  As Emmertz

correctly argues, the evidence that Lancorp did not invest in Megafund until after ONESCO

terminated its relationship with Lancaster is cumulative and is not newly discovered because

ONESCO referenced this fact in the memorandum of law it filed in this court on September 6,

2007.  (*See* Pl.'s Reply in Support of Mot. for Order Authorizing the Parties to Engage in

Immediate Discovery on the Issue of Arbitrability, Doc. No. 25, at 4 ("According to testimony

elicited from the SEC . . . , the funds were actually invested in _2005_, after Lancaster was no

longer associated with ONESCO.).)[12]  Thus, ONESCO has not shown that it is entitled to relief

under Rule 60(b)(2) on the basis of communications between Lancaster and Lancorp's investors

in January and February 2005 or the February 2005 investment in Megafund.

### 2.    2004 Insurance Change

ONESCO also argues that it is entitled to relief under Rule 60(b)(2) on the basis of

evidence that the 2004 change from insurance to establishing security through a bank was not

"material" as Lancaster initially characterized it to be.  ONESCO bases this assertion on the

following exchange, which took place when ONESCO's counsel asked Lancaster about the April

2004 letter he sent to the investors describing this change:

_____

[12] ONESCO contends Lancaster did not provide ONESCO with the information regarding the January and February 2005 communications when he disclosed other Lancorp documents in the spring of 2007, but it does not say when or how it discovered the letters.  More important, it does not argue how it was not able to gain information regarding these communications through the exercise of reasonable diligence prior to the court's issuing the December 19 Memorandum and Order.  Even if it could demonstrate this, ONESCO's motion for relief on the basis of these letters would still fail because the evidence of these letters would not have changed the outcome of the December 19 Memorandum and Order.

Q.  And what you communicated in April 2004 is, in fact, there would be no [insurance] coverage?

A.  Correct.

Q.  As a practical matter, what you told the investors in this letter is that even though there would be no insurance coverage, you alternatively would have security through the bank, the bank holding the monies?

A.  Correct.

Q.  So in terms of preserving principal, there was no material difference in what had existed prior to April 5, 2004, and what occurred after April 5, 2004?

A.  Correct.

Q.  And so, functionally, in terms of what the representations were to the investors as to the preservation of the principal, it was . . . the same at all points in time during the relationship?

A.  Correct.

. . . .

Q.  . . . So as a practical matter, the only difference between the preservation of principal element to the offering that existed . . . prior to April 5, 2004, and what existed after April 5, 2004, is that the investors no longer had to pay for it?

A.  Correct.

(Lancaster Arb. Test. 13:3-15:12, Feb. 6, 2008.)

ONESCO asserts that it is entitled to relief because this testimony shows that the change from insurance to establishing security through a bank was not a material change, even though Lancaster's prior affidavits characterized it as such.  ONESCO's argument that this would change the outcome of the December 19 Memorandum and Order fails for two reasons.  First, the December 19 Memorandum and Order never addressed whether this change was a material change and, therefore, never characterized the change as a material change.  Rather, the December 19 Memorandum and Order focused on the relevant facts surrounding this change, which were Lancaster's April 5, 2004 letter to Emmertz requiring him to withdraw or to confirm his subscription and Emmertz's April 8, 2004 letter confirming his subscription.  These letters were relevant because this ongoing communication, and more specifically Emmertz's confirmation of his participation in Lancorp, showed that Lancaster and Emmertz had an

18

investment relationship while Lancaster was a representative of ONESCO.  Whether the change

from insurance to security through a bank was material or immaterial is not relevant to this

conclusion, and evidence regarding the materiality does not change the outcome of the December

19 Memorandum and Order.

Second, even if the materiality of the change were relevant, ONESCO has not actually

demonstrated that Lancaster believes the change was not material.  Contrary to ONESCO's

assertions, Lancaster's testimony, as quoted above, does not say that he did not consider the

change to be material.  Rather, his testimony only reveals that he believed the change offered

investors the same type of protection, and this admission would not change the outcome of the

December 19 Memorandum and Order.

Furthermore, the evidence is cumulative and ONESCO already had the evidence.  In the

same September 6, 2007 memorandum of law referenced before, ONESCO argued that

Lancaster's declarations demonstrated that this change provided identical coverage and therefore

was not a material change. (*See* Pl.'s Reply in Support of Mot. for Order Authorizing the Parties

to Engage in Immediate Discovery on the Issue of Arbitrability, Doc. No. 25, at 4-5 & n.3.)

Additionally, in the recitation of facts in the December 19 Memorandum and Order, the court

noted that investors still had the same level of protection.  *See Emmertz*, 526 F. Supp. 2d at 525

(Lancaster "replaced this insurance with a validated, written obligation from a bank or broker-

dealer acting as a custodian that provided the same level of protection as the outside insurance.").

Thus, ONESCO has not shown that it is entitled to relief from the December 19 Memorandum

and Order on the basis of Lancaster's testimony regarding change from offering insurance to

establishing security through a bank.

In sum, extraordinary circumstances are not present here to justify granting relief under Rule 60(b)(2).  Ultimately, ONESCO's dramatic arguments and portrayal of the events (*see, e.g.*, Pl.'s Mem. in Support of Mot. for Relief 1 ("It's déjà vu all over again."); *id.* at 4 ("As it has often been said, 'sunshine is the great disinfectant.'"); *id.* at 7 ("As made clear by Lancaster's recent sworn testimony, Emmertz's asserted bases for arbitrability turn out to be the biggest red herring of all time.)), do not establish that ONESCO is entitled to relief.  Even if the court had this factual information when analyzing Emmertz's motion to compel arbitration, the court still would have concluded that Emmertz was an ONESCO customer during the time period in which Lancaster was a representative of ONESCO and would have granted Emmertz's motion to compel arbitration.  ONESCO's motion for relief under Rule 60(b)(2) will be denied.

### B.       Rule 60(b)(3) Analysis

Under Rule 60(b)(3), "the court may relieve a party . . . from a final . . . order . . . for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  To prevail on a Rule 60(b)(3) motion, "the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case."  *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).  The misconduct described by Rule 60(b)(3) can be violated by a "[f]ailure to disclose or produce evidence requested in discovery."  *Id.*

ONESCO argues that it is entitled to relief under Rule 60(b)(3) because (1) some of the facts in Lancaster's affidavits have been shown to be false, and (2) the court's December 19 Memorandum and Order was based on materially false affidavits, which prevented ONESCO from fully and fairly presenting its case.  ONESCO also argues that Emmertz or his counsel

procured and filed these false declarations.  Emmertz responds that ONESCO is not entitled to

relief under Rule 60(b)(3) because Lancaster testified that at the time he made the declarations,

he believed that all of the information in them was true.  Emmertz also argues that ONESCO is

not entitled to relief because even assuming that Lancaster's statements were false or fraudulent

(and Emmertz contends they were not), Lancaster is not a party to this proceeding and is not

covered by Rule 60(b)(3).

ONESCO has not met its burden of showing that it is entitled to relief under Rule

60(b)(3) because it has not demonstrated that an adverse party committed fraud or engaged in

other misconduct and because it has not demonstrated that any alleged conduct prevented it from

fully and fairly litigating its case.  Even assuming that Lancaster engaged in fraud or misconduct

in these proceedings, Lancaster is not a party to this proceeding, and in order to prevail,

ONESCO must establish that it was an adverse party who engaged in fraud or misconduct.  *See*

Fed. R. Civ. P. 60(b)(3).  ONESCO has not provided any facts or evidence to establish that

Emmertz or his counsel engaged in fraud or misconduct.  Additionally, as discussed above, the

evidence to which ONESCO now refers would not have changed the outcome of the December

19 Memorandum and Order, and ONESCO has not established that the absence of some of the

factual information from the prior proceedings prevented it from fully and fairly presenting its

case.  ONESCO is therefore not entitled to relief under Rule 60(b)(3), and its motion will be

denied.

### III.   Conclusion

ONESCO has not shown that it is entitled to relief under Rule 60(b)(2) because the

evidence ONESCO now characterizes as newly discovered would not have changed the outcome

of the December 19 Memorandum and Order.  ONESCO has also failed to show that it is entitled

to relief under Rule 60(b)(3) because it has not established that there was fraud or misconduct by

an adverse party that prevented it from fully and fairly presenting its case.  Thus, ONESCO's

motion for relief from judgment will be denied and Emmertz may proceed to arbitration on his

claims arising between March 23, 2004 and January 3, 2005.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| THE O.N. EQUITY SALES COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-2670 |
| | : | |
| LAWRENCE F. EMMERTZ JR., | : | |
| Defendant. | : | |
| | : | |

## Order

AND NOW on this _____ day of July 2008, upon careful consideration of plaintiff's

motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) and (3)

(Doc. No. 36), defendant's response, and plaintiff's reply thereto, IT IS HEREBY ORDERED

that plaintiff's motion is DENIED.

_____ s/ William H. Yohn Jr. _____
William H. Yohn Jr., Judge